ELECTRONICALLY FILED
2021 Jun 22 AM 9:27
Anthony P. Vivo, CLERK OF COURT - MAHONING

IN THE COURT OF COMMON PLEAS
MAHONING COUNTY, OHIO

| | |
|---|---|
| ANDREA LAMBE<br>222 Perry Street<br>Struthers, Ohio 44471<br><br>Plaintiff,<br><br>v.<br>TMI EMPLOYEE MANAGEMENT, L.P.<br>c/o Hampton Inn Youngstown-Boardman<br>7395 Tiffany South<br>Poland, Ohio 44514<br><br>**Serve also:**<br>CT CORPORATION SYSTEM,<br>Statutory Agent<br>4400 Easton Commons Way, #125<br>Columbus, Ohio 43219<br><br>Defendant. | CASE NO.<br><br>JUDGE:<br><br>**<u>COMPLAINT FOR DAMAGES AND REINSTATEMENT</u>**<br><br>**<u>JURY DEMAND ENDORSED HEREIN</u>** |

Plaintiff, Andrea Lambe, by and through undersigned counsel, as her Complaint against the Defendant, states and avers the following:

**PARTIES & VENUE**

1. Lambe is a resident of the city of Struthers, county of Mahoning, state of Ohio.

2. TMI Employee Management, L.P. ("TMI") is a foreign limited partnership that conducts substantial business in Ohio at 7395 Tiffany South, Poland, Ohio 44514.

3. Within 300 days of the conduct alleged below, Lambe filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2021-02913 against TMI.

4. On April 7, 2021, the EEOC issued and mailed a Notice of Right to Sue letter to Lambe regarding the Charges of Discrimination brought by Lambe against TMI in EEOC Agency Charge No. 532-2021-02913





5. Lambe received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit A.

6. Lambe has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

7. Lambe has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

8. All material events alleged in this Complaint occurred in county of Mahoning.

9. Personal jurisdiction is proper over TMI pursuant to R.C. § 2307.382(A)(1) and (4).

10. Venue is proper pursuant to Civ. R. 3(C)(3) and (6).

11. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

**FACTS**

12. Lambe is a former employee of TMI.

13. Lambe began working for TMI in or around August 2016

14. Lambe worked as a Guest Services Agent for TMI.

15. TMI is a business that provides hotel-management services to the hospitality industry.

16. TMI employs individuals at various hotels throughout the state of Ohio.

17. TMI employs individuals at the Hampton Inn located at 7395 Tiffany South, Poland, Ohio 44514. ("Youngstown/Boardman Hampton Inn")

18. Lambe worked for TMI out of the Youngstown/Boardman Hampton Inn.

19. Lambe was supervised by Annette Iudiciani while working for TMI.

20. Beginning in or around March 2020, due to the emerging COVID-19 pandemic, non-essential businesses began closing or transitioning to remote work.





21. On or about March 29, 2020, Lambe was given a mass lay-off number as TMI laid off many employees due to the COVID-19 pandemic. ("COVID-19 Lay Off")

22. Despite Lambe's COVID-19 Lay Off, Iudiciani continued to contact Lambe after March 29, 2020. ("Iudiciani-Lambe Conversations")

23. Throughout the Iudiciani-Lambe Conversations, Iudiciani asked Lambe how to perform certain tasks that Lambe routinely performed as part of her job.

24. Throughout the Iudiciani-Lambe Conversations, Lambe routinely helped Iudiciani handle work-related matters even though Lambe was not employed by TMI.

25. As part of the COVID-19 Lay Off, TMI, through its parent company, Aimbridge Hospitality, LLC, told its employees that any employee who returned to work before January 1, 2021 would retain his or her seniority status, will have all PTO balances reinstated, would receive all health benefits within a month of rehire, and would have all previous pre-COVID-19 Lay Off work count towards 401(k)-match vesting. ("Entitlement to Re-Employment on Same Terms")

26. Following Lambe's COVID-19 Lay Off, during the Iudiciani-Lambe Conversations, Lambe continually expressed her desire to return to work for TMI.

27. On or about July 21, 2020, Iudiciani offered Lambe the ability to return to work for TMI on an "as needed" basis. ("July 21, 2020 Re-Employment Ultimatum")

28. The July 21, 2020 Re-Employment Ultimatum would require Lambe to work out of Akron, Ohio.

29. Lambe did not previously work out of Akron, Ohio.

30. Lambe did not previously work on an "as needed" basis.





31. The July 21, 2020 Re-Employment Ultimatum was contrary to Entitlement to Re-Employment on Same Terms.

32. Lambe has three school-aged children.

33. Lambe has a car that is unreliable and requires maintenance.

34. Requiring Lambe to work out of Akron, Ohio would force Lambe to commute at least two hours each day.

35. Lambe could not feasibly work out of Akron, Ohio because of her children and car.

36. By giving Lambe the July 21, 2020 Re-Employment Ultimatum, TMI was forcing Lambe to choose between taking care of her children and her employment for TMI.

37. TMI did not require similarly situated male employees to choose between taking care of their school-aged children and their employment.

38. TMI has a policy against workplace harassment and discrimination. ("Harassment & Discrimination Policy")

39. Alternatively, TMI has no policy against workplace harassment and discrimination.

40. Requiring women with school-aged children to choose between their job and raising their children while not imposing that same ultimatum on similarly situated male employees is a violation of TMI's Harassment & Discrimination Policy.

41. Alternatively, requiring women with school-aged children to choose between their job and raising their children while not imposing that same ultimatum on similarly situated male employees is not a violation of TMI's Harassment & Discrimination Policy.

42. TMI did not give similarly situated male employees with school-aged children a return-to-work offer similar to that of the July 21, 2020 Re-Employment Ultimatum.





43. In providing Lambe the July 21, 2020 Re-Employment Ultimatum, TMI treated Lambe less favorably than similarly situated male employees.

44. The July 21, 2020 Re-Employment Ultimatum was because of Lambe's sex.

45. The July 21, 2020 Re-Employment Ultimatum was an adverse action.

46. The July 21, 2020 Re-Employment Ultimatum was an adverse employment action.

47. The July 21, 2020 Re-Employment Ultimatum constitutes discrimination on the basis of sex.

48. The July 21, 2020 Re-Employment Ultimatum was willful.

49. The July 21, 2020 Re-Employment Ultimatum was intentional.

50. Following the July 21, 2020 Re-Employment Ultimatum, Lambe tried to coordinate a means for taking care of her school-aged children and her pet dog so that Lambe could work on an as-needed basis for TMI.

51. Following the July 21, 2020 Re-Employment Ultimatum, Lambe explained that she would have difficulties returning to work for TMI in Akron, Ohio because of her children, pet dog, and car troubles.

52. TMI is a covered employer under the FMLA.

53. Because COVID-19 Pandemic, the FMLA was expanded by the Families First Coronavirus Response Act. ("FFCRA")

54. Under the FFCRA, a covered employer is required to provide two weeks of paid leave for an employee who is unable to work because he or she must care for a child whose school or childcare provider is closed or unavailable for reasons related to COVID-19.

55. Lambe's children are under the age of 18.

56. Lambe's children's schools and childcare providers were closed because of COVID-19.

57. On information and believe, TMI is a covered employer under the FFCRA.





58. Based on the July 21, 2020 Re-Employment Ultimatum, TMI violated the FFCRA.

59. TMI willfully violated the FFCRA.

60. TMI intentionally violated the FFCRA.

61. Lambe opposed the July 21, 2020 Re-Employment Ultimatum.

62. In opposing the July 21, 2020 Re-Employment Ultimatum, Lambe learned that TMI did not terminate similarly situated male employees as part of the COVID-19 Lay Off.

63. In opposing the July 21, 2020 Re-Employment Ultimatum, Lambe learned that she was given the opportunity to return to work for TMI so that other employees could utilize their vacation days and paid time off.

64. Lambe was not given the opportunity to utilize vacation days and paid time off before her COVID-19 Lay Off.

65. In performing the COVID-19 Lay Off, Lambe was treated less favorably than similarly situated male employees.

66. The COVID-19 Lay Off was because of Lambe's sex.

67. The COVID-19 Lay Off constitutes discrimination on the basis of sex.

68. The COVID-19 Lay Off was willful.

69. The COVID-19 Lay Off was intentional.

70. Following the July 21, 2020 Re-Employment Ultimatum, Lambe agreed to work for TMI as long as she could be given an advanced schedule so she could coordinate transportation and care of her children and pet dog.

71. Following the July 21, 2020 Re-Employment Ultimatum, Iudiciani sent Lambe several schedules that were inconsistent. ("Scheduling Issues")

72. The Scheduling Issues included TMI's changing Lambe's schedule on a daily basis.





73. The Scheduling Issues included TMI's telling Lambe to come in to work with little notice and then immediately cancelling Lambe's shift.

74. The Scheduling Issues were retaliatory in nature because of Lambe's opposing the July 21, 2020 Re-Employment Ultimatum.

75. TMI did not send similarly situated male employees inconsistent and/or conflicting schedules.

76. In performing the Scheduling Issues, TMI treated Lambe less favorably than similarly situated male employees.

77. The Scheduling Issues were because of Lambe's sex.

78. The Scheduling Issues were an adverse action.

79. The Scheduling Issues were an adverse employment action.

80. The Scheduling Issues constitute discrimination on the basis of sex.

81. The Scheduling Issues made it less likely for a reasonable employee to oppose workplace discrimination and/or harassment on the basis of sex.

82. The Scheduling Issues constitute retaliation.

83. The Scheduling Issues were willful.

84. The Scheduling Issues were intentional.

85. The Scheduling Issues were intended to cause Lambe emotional distress.

86. The Scheduling Issues did cause Lambe emotional distress.

87. In response to the Scheduling Issues, Lambe told Iudiciani that it was unreasonable to continue sending Lambe conflicting schedules and cancelling Lambe's shift at the last minute.





88. In response to the Scheduling Issues, Lambe told Iudiciani that she felt like the Scheduling Issues were done to harass and punish Lambe for opposing the July 21, 2020 Re-Employment Ultimatum.

89. In response to the Scheduling Issues, Lambe told Iudiciani that she felt like the Scheduling Issues constituted discrimination on the basis of sex. ("Report of Discrimination")

90. Based on TMI's policies, a report of discrimination is a significant workplace event.

91. Alternatively, a report of discrimination is not a significant workplace event.

92. An investigation should include interviewing the complainant.

93. An investigation should include interviewing the subject of the complaint.

94. An investigation should include interviewing the subject of the reported discrimination.

95. An investigation should include interviewing witnesses to the reported discrimination.

96. An investigation should include getting a written statement from the complainant.

97. An investigation should include getting a written statement from the subject of the complaint.

98. An investigation should include getting a written statement from the subject of the reported discrimination.

99. In response to the Report of Discrimination, TMI did not interview Lambe.

100. In response to the Report of Discrimination, TMI did not interview Iudiciani.

101. In response to the Report of Discrimination, TMI did not get a written statement from Lambe.

102. In response to the Report of Discrimination, TMI did not get a written statement from Iudiciani.

103. In response to the Report of Discrimination, TMI conducted no investigation whatsoever.

104. By failing to investigate the Report of Discrimination, TMI ratified Iudiciani's conduct.





105. By failing to investigate the Report of Discrimination TMI allowed Iudiciani's conduct to continue.

106. Failing to investigate a report of discrimination is an adverse action.

107. Failing to investigate a report of discrimination is an adverse employment action.

108. TMI willfully failed to investigate the Report of Discrimination.

109. TMI intentionally failed to investigate the Report of Discrimination.

110. Lambe opposed the Scheduling Issues. ("Opposition to the Scheduling Issues")

111. Following Lambe's Opposition to the Scheduling Issues, TMI refused to schedule Lambe for more shifts.

112. Refusing to schedule an employee for shifts is an adverse action.

113. Refusing to schedule an employee for more shifts is an adverse employment action.

114. Because TMI refused to schedule Lambe for more shifts, Lambe was terminated on or about July 28, 2021.

115. Terminating an employee is an adverse action.

116. Terminating an employee is an adverse employment action.

117. Lambe was terminated because of her sex.

118. Lambe was terminated because of her Opposition to the Scheduling Issues.

119. TMI did not terminate similarly situated female employees.

120. In terminating Lambe, TMI made it less likely for a reasonable employee to oppose discrimination and/or harassment on the basis of sex.

121. TMI's termination of Lambe's employment constitutes discrimination on the basis of sex.

122. TMI's termination of Lambe's employment constitutes retaliation.





123. Following Lambe's termination, on or about July 28, 2021, Iudiciani contacted Lambe's sister about Lambe's Opposition to the Scheduling Issues. ("July 28, 2021 Contacting Lambe's Sister")

124. During the July 28, 2021 Contacting Lambe's Sister, Iudiciani told Lambe's sister that Lambe's Opposition to the Scheduling Issues was because Lambe was using illegal narcotics. ("Falsely Alleging that Lambe Was On Drugs")

125. TMI did not falsely allege that similarly situated male employees were using illegal narcotics.

126. TMI's Falsely Alleging that Lambe Was On Drugs was because of Lambe's sex.

127. TMI's Falsely Alleging that Lambe Was On Drugs was because Lambe opposed the July 21, 2020 Re-Employment Ultimatum.

128. TMI's Falsely Alleging that Lambe Was On Drugs was because of Lambe's Opposition to the Scheduling Issues.

129. In Falsely Alleging that Lambe Was On Drugs, TMI made it less likely for a reasonable employee to oppose discrimination and/or harassment on the basis of sex.

130. TMI's Falsely Alleging that Lambe Was On Drugs was an adverse action.

131. TMI's Falsely Alleging that Lambe Was On Drugs was an adverse employment action.

132. TMI's Falsely Alleging that Lambe Was On Drugs constitutes discrimination on the basis of sex.

133. TMI's Falsely Alleging that Lambe Was On Drugs constitutes retaliation.

134. TMI's Falsely Alleging that Lambe Was On Drugs was willful.

135. TMI's Falsely Alleging that Lambe Was On Drugs was intentional.

136. TMI's Falsely Alleging that Lambe Was On Drugs was meant to cause Lambe emotional distress.





137. TMI's Falsely Alleging that Lambe Was On Drugs did cause emotional distress.

138. The above alleged facts demonstrate that TMI engaged in a pattern and practice of unlawful discrimination on the basis of sex.

139. The above alleged facts demonstrate that TMI engaged in a pattern and practice of unlawful retaliation.

140. As a result of the unlawful discriminatory and retaliatory actions as alleged above, Lambe has suffered and will continue to suffer damages, including emotional distress damages.

**COUNT I: DISCRIMINATION ON THE BASIS OF SEX.**

141. Lambe restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

142. As a female, Lambe is a member of a protected class under 42 U.S.C. § 2000e *et seq*.

143. During Lambe's employment, TMI treated Lambe less favorably than similarly situated male employees.

144. TMI took multiple adverse actions and adverse employment actions against Lambe because of her sex.

145. TMI's discriminatory conduct described above constitutes discrimination on the basis of sex in violation of 42 U.S.C. § 2000e *et seq.*

146. As a result of TMI's discrimination against Lambe in violation of 42 U.S.C. § 2000e *et seq.*, Lambe has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Lambe to injunctive, equitable, and compensatory monetary relief.

147. As a result of TMI's discrimination against Lambe in violation of 42 U.S.C. § 2000e *et seq.*, Lambe has suffered mental anguish and emotional distress, including, but not limited to,





depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain suffering, and physical injury.

148. In its discriminatory actions as alleged above, TMI acted with malice or reckless indifference to the rights of Lambe, thereby entitling Lambe to an award of punitive damages.

149. To remedy the violations of the rights of Lambe secured by 42 U.S.C. § 2000e *et seq*., Lambe requests that the Court award her the relief demanded below.

**COUNT II: RETALIATION**

150. Lambe restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

151. As a female, Lambe is a member of a protected class under 42 U.S.C. § 2000e *et seq*.

152. TMI discriminated against Lambe throughout and after her employment by treating her less favorably than similarly situated male employees.

153. During her employment, Lambe opposed TMI's discriminatory treatment of her.

154. In opposing TMI's actions, Lambe reasonably believed that she was opposing unlawful discrimination on the basis of her sex.

155. After Lambe opposed TMI's discriminatory treatment of her, TMI took adverse actions and adverse employment actions in retaliation to Lambe's opposing TMI's unlawful discrimination.

156. 42 U.S.C. § 2000e-3(a) makes it unlawful for any "employer to discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

157. TMI's actions constitute unlawful retaliation in violation of 42 U.S.C. § 2000e-3(a).





158. As a result of TMI's discrimination against Lambe in violation of 42 U.S.C. § 2000e-3(a), Lambe has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Lambe to injunctive, equitable, and compensatory monetary relief.

159. As a result of TMI's discrimination against Lambe in violation of 42 U.S.C. § 2000e-3(a), Lambe has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain suffering, and physical injury.

160. In its discriminatory actions as alleged above, TMI acted with malice or reckless indifference to the rights of Lambe, thereby entitling Lambe to an award of punitive damages.

161. To remedy the violations of the rights of Lambe secured by 42 U.S.C. § 2000e-3(a), Lambe requests that the Court award her the relief demanded below.

**COUNT III: VIOLATION OF THE FFCRA**

162. Lambe restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

163. Section 5102 of the FFCRA provides that covered employers "shall provide to each employee employed by the employer paid sick time to the extent that the employee is unable to work (or telework) due to a need for leave because . . . [t]he employee is caring for a son or daughter of such employee if the school or place of care of the son or daughter has been closed, or the child care provider of such son or daughter is unavailable, due to COVID–19 precautions."

164. TMI failed to provide Lambe with sick leave in accordance with Section 5102 of the FFCRA.

165. Under Section 5105 of the FFCRA, an employer who violates Section 5102 of the FFCRA is in violation of Section 6 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206, and





is subject to the penalties under Sections 16 and 17 of the FLSA, 29 U.S.C. §§ 216 & 217, respectively.

166. TMI willfully and intentionally violated Section 5102 of the FFCRA by failing to allow Lambe to take sick leave to care for her school-aged children.

167. As a result of TMI's violation of the FFCRA, Lambe has suffered and will continue to suffer damages.

168. To remedy the violations of the rights of Lambe secured by the FFCRA, Lambe requests that the Court award her the relief demanded below.





**DEMAND FOR RELIEF**

WHEREFORE, Lambe demands from TMI the following:

(a) Issue an order requiring TMI to restore Lambe to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against TMI of compensatory and monetary damages to compensate Lambe for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award against TMI of all the remedies provided for in 29 U.S.C. § 216(b).

(d) An award of punitive damages against TMI in an amount in excess of $25,000;

(e) An award of reasonable attorneys' fees and non-taxable costs for Lambe claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

Brian D. Spitz (0068816)
Rocco J. Screnci (0100333)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax: (216) 291-5744
Email: brian.spitz@spitzlawfirm.com
rocco.screnci@spitzlawfirm.com

*Attorneys For Plaintiff Andrea Lambe*





**JURY DEMAND**

Plaintiff Andrea Lambe demands a trial by jury by the maximum number of jurors permitted.

Brian D. Spitz (0068816)
Rocco J. Screnci (0100333)

*Attorneys For Plaintiff Andrea Lambe*





EEOC Form 161-B (11/2020)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

ELECTRONICALLY FILED
2021 Jun 22 AM 9:27
Anthony P. Vivo CLERK OF COURT - MAHONING

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To: **Andrea Lambe**
**222 Perry Street**
**Struthers, OH 44471**

From: **Cleveland Field Office**
**EEOC, AJC Fed Bldg**
**1240 E 9th St, Ste 3001**
**Cleveland, OH 44199**

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **532-2020-02913** | **Benjamin Arnold, Investigator** | **(216) 306-1147** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Dana R Hutter

**Dana R. Hutter,**
**Deputy Director**

04-07-2021
*(Date Issued)*

Enclosures(s)

cc:

**Rebecca Bennett**
**Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**
**127 Public Square**
**Suite 4100**
**Cleveland, OH 44114**

**Brian D. Spitz**
**THE SPITZ LAW FIRM, LLC**
**25200 Chagrin Blvd.**
**Suite 200**
**Beachwood, OH 44122**

2021 CV 01058

Exhibit A

EXHIBIT A

Enclosure with EEOC
Form 161-B (11/2020)

## INFORMATION RELATED TO FILING SUIT UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits and other provisions of State law may be shorter or more limited than those described below.)*

### PRIVATE SUIT RIGHTS -- Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *issued* to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

### PRIVATE SUIT RIGHTS -- Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

### ATTORNEY REPRESENTATION -- Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

### ATTORNEY REFERRAL AND EEOC ASSISTANCE -- All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***

2021 CV 01058

EXHIBIT A